UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARLOS DIAZ-ORTIZ,

     Plaintiff,

v.                             Case No.:  2:20-cv-134-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**<u>OPINION AND ORDER</u>**

     Plaintiff Carlos Diaz-Ortiz filed a Complaint on February 27, 2020.  (Doc. 1).

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("SSA") denying his claim for a period of disability and

disability insurance benefits.  The Commissioner filed the transcript of the

administrative proceedings (hereinafter referred to as "Tr." followed by the

appropriate page number), and the parties filed a joint memorandum detailing their

respective positions.  (Doc. 15).  For the reasons set forth herein, the decision of the

Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42

U.S.C. § 405(g).

## I.    **Social Security Act Eligibility**

     The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## II.    Procedural History

Plaintiff filed a claim for a period of disability and disability insurance benefits on March 28, 2017.  (Tr. at 15).[1]  Plaintiff alleged a disability onset date of July 7, 2016.  (*Id.*).  Plaintiff's claim was initially denied on June 12, 2017.  (*Id.*).  Plaintiff requested an administrative hearing, which was held on January 15, 2019, before Administrative Law Judge ("ALJ") Ryan Johannes.  (*Id.* at 15, 33-63).  The ALJ issued an unfavorable decision on March 20, 2019.  (*Id.* at 15-27).  On December 27, 2019, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-3).  Plaintiff then filed his Complaint with this Court on February 27, 2020, (Doc. 1), and the parties consented to proceed before a United States Magistrate Judge for all purposes, (Docs. 11, 13).  The case is ripe for review.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed his claim after March 27, 2017.

### III.        Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his or her past relevant work ("PRW"); and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity from the alleged onset date of July 7, 2016, through the date of the decision. (Tr. at 17).  At step two, the ALJ found that Plaintiff has the following severe impairments:  "cervical degenerative disc disease with spondylosis; mild lumbar degenerative disc disease; carpal tunnel syndrome; post-traumatic stress disorder; mild neurocognitive disorder; alcohol use disorder in sustained full remission in a controlled environment (20 [C.F.R. §] 404.1520(c))."  (*Id.*).  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§]

404.1520(d), 404.1525 and 404.1526)." (*Id.* at 18).

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity [("RFC")] to perform
> medium work as defined in 20 [C.F.R. §] 404.1567(c) except
> he can frequently climb ramps/stairs, but never climb
> ladders or scaffolds.  He can occasionally stoop, but never
> crawl.  The claimant can frequently handle and finger
> bilaterally, and should avoid all exposure to unprotected
> heights, with no more than occasional exposure to extreme
> cold or heat.  He can understand, remember, and carry out
> detailed and some complex instructions, but should not
> interact with the general public.

(*Id.* at 19-20).

The ALJ also determined that Plaintiff is unable to perform any of his past

relevant work, citing 20 [C.F.R. §] 404.1565.  (*Id.* at 25).  "Considering the

claimant's age, education, work experience, and [RFC]," the ALJ determined that

"there are jobs that exist in significant numbers in the national economy that the

claimant can perform (20 [C.F.R. §§] 404.1569 and 404.1569a)."  (*Id.* at 26).

Accordingly, the ALJ found that "[t]he claimant has not been under a disability, as

defined in the Social Security Act, from July 7, 2016, through the date of this

decision (20 [C.F.R. §] 404.1520(g))."  (*Id.* at 27).

## IV.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence, *Richardson v.*

*Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## V.    Analysis

On appeal, Plaintiff raises four issues.  As stated by the parties, the issues are:

1.    Whether the record supports the reasons that the ALJ offered for finding Dr. Jacob's and Dr. Padilla-Martinez's opinions to be unpersuasive;

2.    Whether the ALJ offered a sufficient justification for finding Dr. Zeff's opinion to be unpersuasive;

3.      Whether the ALJ provided a sufficient justification for finding
         Plaintiff's 100 percent VA disability rating to be unpersuasive; and

4.      Whether the record supports the reasons that the ALJ gave for
         finding Dr. Wieczorek's opinion to be unpersuasive.

(Doc. 15 at 15, 26, 29, 35).   The Court addresses each issue in turn below.

### A.      The ALJ Properly Determined the Persuasiveness of
###          Dr. Jacob and Dr. Padilla-Martinez's Opinions.

Plaintiff argues that the ALJ's decision is due to be remanded based on his
failure to show good cause for finding Dr. Jacob and Dr. Padilla-Martinez's opinions
unpersuasive.  (Doc. 15 at 15).  Plaintiff notes that his case is governed by the Social
Security Administration's revised regulations.  (*See id.* at 16); *see also* Revisions to
Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844
(Jan. 18, 2017).  In fact, Plaintiff states that "[t]he new regulations abolish the
'treating source rule' and they state that an ALJ should no longer assign a specific
amount of 'weight' to medical opinions in the record," despite noting that Dr. Jacob
and Dr. Padilla-Martinez are two of Plaintiff's treating sources and arguing that the
ALJ needed to show good cause to reject their opinions.  (Doc. 15 at 16).  Thus, it is
unclear which standard Plaintiff contends applies here.

In either case, Plaintiff does argue that Dr. Jacob and Dr. Padilla-Martinez's
opinions are consistent with the record because "a review of the treatment notes
shows that Plaintiff actually had significant mental status abnormalities."  (*Id.* at 17
(citing Tr. at 307, 417, 573-74, 763)).  Additionally, Plaintiff contends that the ALJ
erred when he found that Plaintiff's ability to move from New York to Florida after

the alleged onset date was inconsistent with Dr. Jacob's opinion.  (*Id.* at 17-18 (citing Tr. at 24, 795, 831)).

In response, Defendant argues that the revised regulations overrule the treating source rule and, instead, require the ALJ to evaluate the "persuasiveness" of all medical opinions and articulate how he considered the supportability and consistency factors of those opinions.  (*Id.* at 18-22 (citing 20 C.F.R. § 404.1520c)).  Additionally, Defendant notes that, despite citing case law at odds with the revised regulations, Plaintiff has not expressly argued that the Social Security Administration's revised regulations are inapplicable in his case.  (*Id.* at 22 (citations omitted)).  Accordingly, Defendant contends that Plaintiff waived his ability to challenge the applicability of the revised regulations.  (*Id.*).

Moreover, Defendant argues that the ALJ satisfied the new standard under the revised regulations and substantial evidence supports the ALJ's determination that Dr. Jacob and Dr. Padilla-Martinez's opinions were not persuasive because they were not supported by their own notes and they were not consistent with the other evidence of record.  (*See id.* at 22-26 (citations omitted)).

The Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Because Plaintiff filed his claim on March 28, 2017, (Tr. at 15), the revised regulations apply, *see* 20 C.F.R. § 404.1520c.  The regulations require that an ALJ apply the same factors in the consideration of opinions from all medical sources,

rather than afford specific evidentiary weight to certain sources' opinions.  20 C.F.R. § 404.1520c(a).

In contrast, under Eleventh Circuit precedent, the "treating source rule" requires the ALJ to afford "[t]he opinion of a treating physician . . . substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

At present, a question remains as to whether the Social Security Administration's 2017 revised regulations override the Eleventh Circuit's treating source rule.  *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *6 (M.D. Fla. Aug. 5, 2021) ("Given the absence of any binding or persuasive guidance from the Court of Appeals, the Court is not willing to go as far as the Commissioner suggests and find that cases applying the 'good cause' standard are no longer good law, particularly given that *Winschel* [*v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011)] remains binding Eleventh Circuit precedent."), *with Douglas v. Saul*, No. 4:20-cv-00822-CLM, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021) ("[Based on the application of *Chevron* and *Brand X*,] the court will apply the 2017 regulations – not the treating physician rule – to the ALJ's evaluation of the opinion evidence."), *and Stemple v. Kijakazi*, No. 1:20-cv-485, 2021 WL 4060411, at *6 (N.D. Ohio Sept. 7, 2021) (collecting cases in support of the same proposition).

Here, Plaintiff fails to address the Commissioner's argument that the Social Security Administration's 2017 revised regulations invalidate the Eleventh Circuit's

treating source rule.  (*See* Doc. 15).  Nonetheless, because the result remains the same under both standards, the Court need not resolve the conflict.

First, under the revised regulations, as to each medical source, the ALJ must consider:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered.  *See* 20 C.F.R. § 404.1520c(b)(2).  In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source.  20 C.F.R. § 404.1520c(b)(1).  The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the

record. *See* 20 C.F.R. § 404.1520c(c)(1)-(2). Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Second, under Eleventh Circuit precedent, the ALJ must show "good cause" to discredit the opinion of a treating physician. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotations omitted) (citing *Phillips*, 357 F.3d at 1241). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

Here, Plaintiff challenges the ALJ's findings that Dr. Jacob and Dr. Padilla-Martinez's opinions were not persuasive. (Doc. 15 at 15-18). To assess whether these findings are supported by substantial evidence, the Court reviews below (1) how the ALJ determined the persuasiveness of each opinion and (2) whether good cause exists to discredit each opinion.

### 1.   Whether the ALJ Properly Determined the Persuasiveness of Dr. Jacob's Opinion.

In evaluating the persuasiveness of Dr. Jacob's opinion, the ALJ specifically noted that the opinion was inconsistent with the other evidence of record and unsupported by Dr. Jacob's own mental status examinations.  (*See* Tr. at 24). Moreover, there is substantial evidence within the record to support the ALJ's determination.  (*See id.* at 306, 644-45, 653-54, 657-58, 795, 824, 864, 870-73, 880).

Dr. Jacob opined that Plaintiff had a marked limitation in the ability to carry out detailed instructions and maintain attention and concentration for extended periods and a complete inability to function independently outside the area of his home due to panic attacks.  (*Id.* at 830-31).

The ALJ found that "[Plaintiff's] generally unremarkable mental status exams apart from some anxiety and irritability do not support Dr. Jacob's opinion."  (*Id.* at 24).  Those "generally unremarkable mental status exams" include:  (1) Dr. Jacob's September 17, 2018 record, which states that Plaintiff was "Alert, Oriented appropriate for situation . . . attentive . . . cooperative Mood:  appropriate Affect:  congruent with mood . . . Symptoms of grief and frustration over his inability to find a rental house.  No evidence of anxiety or panic . . . Effectiveness of coping skills:  effective," (*see id.* (citing Tr. at 657-58)); and (2) Dr. Jacob's November 28, 2018 record, which states that Plaintiff was "Alert, Oriented appropriate for situation . . . attentive . . . cooperative Mood:  appropriate Affect:  congruent with mood . . . Effectiveness of coping skills:  effective," (*see id.* (citing Tr. at 872-73)).  Upon review,

the Court finds that Dr. Jacob's opinion that Plaintiff had a marked limitation in the ability to carry out detailed instructions and maintain attention and concentration for extended periods was not supported by Dr. Jacob's own mental status examinations in which he recorded that Plaintiff was alert, oriented, attentive, cooperative, goal-directed, and effectively using coping skills.  (*See id.* at 657-58, 685, 727, 792, 872-73).

The ALJ also noted that Dr. Jacob's opinion was inconsistent with the other evidence of record.  (*Id.* at 24).  The ALJ specifically noted that Dr. Jacob's opinion that Plaintiff had a "[c]omplete inability to function independently outside the area of [Plaintiff's] home due to panic attacks," was inconsistent with:  (1) Plaintiff's ability to facilitate a move from New York to Florida during the relevant time period, (*id.* at 306, 795, 824); and (2) multiple mental status examinations with generally unremarkable findings beyond Plaintiff's anxiety and irritability, (*id.* at 644-45, 653-54, 864, 880).  The Court finds that the evidence cited by the ALJ supports his finding that Dr. Jacob's opinion was inconsistent with the other evidence of record.

Additionally, the Court is not persuaded by Plaintiff's arguments that the ALJ erred when he afforded Dr. Jacob's opinion "little persuasiveness" based on its inconsistency with the other evidence of record and lack of support from his own records.

First, while Plaintiff contends that his ability to move from New York to Florida does not relate to Dr. Jacob's opinion, (*see* Doc. 15 at 18 (citing Tr. at 831)), the Court disagrees and finds that Plaintiff's ability to move from one state to another

is clearly inconsistent with Dr. Jacob's opinion that Plaintiff had a "[c]omplete inability to function independently outside the area of [Plaintiff's] home due to panic attacks."

Second, to the extent that Plaintiff cites records showing Plaintiff did have "significant mental status abnormalities," (*see id.* at 17 (citing Tr. at 307, 417, 573-74, 763)), the Court finds these records insufficient to show that the ALJ's finding is unsupported by substantial evidence.

Upon review of the records cited by Plaintiff, the Court finds that they are all associated with mental status examinations consistent with the ALJ's findings. For example, Dr. Matalon's October 14, 2016 and December 20, 2016 records show that Plaintiff reported "continued base anxiety [with] frequent anxiety attacks, [and poor] sleep," but also show through mental status exam findings that Plaintiff exhibited "good [activities of daily living], pleasant, calm, speech [within normal limits], affect stable, [thought process] linear," and "good [activities of daily living], pleasant, calm, speech [within normal limits], dysphoric affect, [thought process] linear." (Tr. at 307, 417). Additionally, Dr. Flach's May 16, 2017 examination shows that Plaintiff "was seen as a cooperative individual who presented with adequate social skills," and that while Plaintiff was noted as having seemingly restless motor behavior, pressured speech, an anxious affect, and mildly impaired attention, concentration, and memory, his mental status exam was otherwise unremarkable. (Tr. at 573-74). Moreover, Dr. Padilla-Martinez's March 21, 2018 record shows that Plaintiff reported "an increase in symptoms of PTSD," but also shows through an objective

mental status exam that Plaintiff "[a]rrived early; alert and fully oriented; good eye contact and attention; speech was fluent and goal-directed; veteran reported euthymic mood with congruent affect; thought process was linear and coherent; . . . Veteran is future and goal-oriented." (Tr. at 763).  Despite Plaintiff's assertion that these records contradict the ALJ's findings, the Court finds that they do show mental status examinations that align with the ALJ's findings.

Thus, these records cannot be used as a basis to overturn the ALJ's finding as to the persuasiveness of Dr. Jacob's opinion.  Rather than contradict the ALJ's finding that Dr. Jacob's opinion is inconsistent with the record, they appear to bolster it.

In sum, the Court finds that the ALJ comprehensively analyzed the supportability and consistency of Dr. Jacob's opinion when determining its persuasiveness as required by 20 C.F.R. § 404.1520c.  Additionally, the Court finds that the ALJ's determination of the persuasiveness of Dr. Jacob's opinion is supported by substantial evidence within the record.  Further, even considering Dr. Jacob's status as a treating physician, the ALJ clearly articulated good cause for discrediting Dr. Jacob's opinion when the ALJ showed that the opinion was inconsistent with the other evidence of record and unsupported by Dr. Jacob's own medical records and mental status examinations.  The Court has not found, and Plaintiff has not cited, any medical evidence demonstrating that the ALJ's finding as to the persuasiveness of Dr. Jacob's opinion is not supported by substantial evidence.

Thus, the Court finds that the ALJ's decision is due to be affirmed as to his determination of the persuasiveness of Dr. Jacob's opinion.

### 2.    Whether the ALJ Properly Determined the Persuasiveness of Dr. Padilla-Martinez's Opinion.

To begin, the Court notes that the ALJ afforded Dr. Padilla-Martinez's opinion "little weight." (Tr. at 24). Under the revised regulations, the ALJ is required to assess the "persuasiveness" of medical opinions, not their weight. *See* 20 C.F.R. § 404.1520c(b). However, the Court notes that this error appears to be merely clerical in nature given that the ALJ still conducted the applicable analysis of Dr. Padilla-Martinez's opinion. (*See* Tr. at 24).[2] Thus, the Court construes the ALJ's finding of "little weight" as a finding of "little persuasiveness" as to Dr. Padilla-Martinez's opinion.

Turning to the ALJ's analysis of the opinion, the ALJ specifically noted that the opinion was "highly inconsistent" with the other evidence of record and unsupported by Dr. Padilla-Martinez's own mental status examinations. (*See* Tr. at 24-25). Moreover, there is substantial evidence within the record to support the ALJ's determination. (*See id.* at 574, 644-45, 653-54, 657-58, 674, 685, 706, 717, 727, 753, 864, 870-73, 880).

The ALJ found that "[Plaintiff's] long history of unremarkable mental status exams apart from some notations of anxiousness and irritability" were "highly

---

[2] Neither party raises this issue in the Joint Memorandum, likely in recognition of the inconsequential nature of it.

inconsistent" with Dr. Padilla-Martinez's opinion.  (*Id.* at 24).  Those "unremarkable mental status exams" include:  (1) two mental status exams completed by Dr. Padilla-Martinez on April 17, 2018, and May 26, 2018, in which Dr. Padilla-Martinez found that Plaintiff was "[a]lert and fully oriented; good attention; speech was fluent and goal-directed; veteran reported euthymic mood with congruent affect; thought process was linear and coherent; no psychosis or mania . . . Veteran is future and goal-oriented," (*see id.* (citing Tr. at 753, 717)); (2) three mental status exams completed by Dr. Padilla-Martinez on July 12, 2018, September 21, 2018, and March 21, 2018, in which Dr. Padilla-Martinez found that Plaintiff "[a]rrived early; alert and fully oriented; good eye contact and attention; speech was fluent and goal-directed; veteran reported euthymic mood with congruent affect; thought process was linear and coherent; . . . Veteran is future and goal-oriented," (*see id.* (citing Tr. at 674, 706, 763)); and (3) two mental status exams completed by Dr. Padilla-Martinez on November 1, 2018, and December 13, 2018, in which Dr. Padilla-Martinez found that Plaintiff "[a]rrived early; alert and fully oriented; good eye contact and attention; speech was fluent and goal-directed; veteran reported anxious mood with congruent affect; thought process was linear and coherent; . . . Veteran is future and goal-oriented," (*see id.* (citing Tr. at 653-54, 864)).

Upon a review of the record, Dr. Padilla-Martinez's opinion that Plaintiff has a multitude of marked and extreme work-related mental limitations, (*see* Tr. at 836-37), is not supported by Dr. Padilla-Martinez's own mental status examinations in

which she recorded that Plaintiff was alert, had a linear and coherent thought process, and was goal-directed.  (*See id.* at 753, 717, 674, 706, 763, 653-54, 864).

The ALJ also noted that Dr. Padilla-Martinez's opinion was inconsistent with the other evidence of record.  (*Id.* at 24-25 (citing Tr. at 870-73, 880, 644-45, 657-58, 685, 727)).  The ALJ specifically noted that Dr. Padilla-Martinez's opinion was inconsistent with Dr. Flach's May 16, 2017 psychiatric examination that reports Plaintiff's attention, concentration, and memory as only "mildly impaired."  (*Id.* at 574).  Accordingly, the Court finds that the ALJ's assessment of the consistency of Dr. Padilla-Martinez's opinion is supported by substantial evidence.

Additionally, the Court is not persuaded by Plaintiff's argument that the ALJ erred when he afforded Dr. Padilla-Martinez's opinion little persuasiveness based on its inconsistency with the other evidence of record and lack of support from her own records.  To the extent that Plaintiff cites records showing that Plaintiff did have "significant mental status abnormalities," (*see id.* at 17 (citing Tr. at 307, 417, 573-74, 763)), the Court finds these records insufficient to show that the ALJ's finding is unsupported by substantial evidence.

Upon review of the records cited by Plaintiff, the Court again finds that they are all associated with mental status examinations consistent with the ALJ's findings. For example, Dr. Matalon's October 14, 2016 and December 20, 2016 records show that Plaintiff reported "continued base anxiety [with] frequent anxiety attacks, [and poor] sleep," but also show through mental status exam findings that Plaintiff exhibited "good [activities of daily living], pleasant, calm, speech [within normal

limits], affect stable, [thought process] linear," and "good [activities of daily living], pleasant, calm, speech [within normal limits], dysphoric affect, [thought process] linear." (Tr. at 307, 417). Further, Dr. Flach's May 16, 2017 examination shows that Plaintiff "was seen as a cooperative individual who presented with adequate social skills," and while he was noted as having seemingly restless motor behavior, "fluent[, but] a little pressured [speech,] . . . a little anxious [affect,]" and mildly impaired attention, concentration, and memory, his mental status exam was otherwise unremarkable. (Tr. at 573-74). Moreover, Dr. Padilla-Martinez's own March 21, 2018 record shows that Plaintiff reported "an increase in symptoms of PTSD," but also shows through an objective mental status exam that Plaintiff "[a]rrived early; alert and fully oriented; good eye contact and attention; speech was fluent and goal-directed; veteran reported euthymic mood with congruent affect; thought process was linear and coherent; . . . Veteran is future and goal-oriented." (Tr. at 763). Despite Plaintiff's assertion that these records contradict the ALJ's findings, the Court finds that they support it.

Thus, these records cannot be used as a basis to overturn the ALJ's finding as to the persuasiveness of Dr. Padilla-Martinez's opinion. Rather than contradict the ALJ's finding that Dr. Padilla-Martinez's opinion is inconsistent with the record, they appear to bolster it.

In sum, the Court finds that the ALJ comprehensively analyzed the supportability and consistency of Dr. Padilla-Martinez's opinion when determining its persuasiveness as required by 20 C.F.R. § 404.1520c. Additionally, the Court

finds that the ALJ's determination of the persuasiveness of Dr. Padilla-Martinez's opinion is supported by substantial evidence within the record.  Further, even considering Dr. Padilla-Martinez's status as a treating physician, the ALJ clearly articulated good cause for discrediting Dr. Padilla-Martinez's opinion when the ALJ showed that the opinion was inconsistent with the other evidence of record and unsupported by Dr. Padilla-Martinez's own medical records and mental status examinations.  The Court has not found, and Plaintiff has not cited, any records demonstrating that the ALJ's finding as to the persuasiveness of Dr. Padilla-Martinez's opinion is not supported by substantial evidence.

Thus, the Court finds that the ALJ's decision is due to be affirmed as to his determination of the persuasiveness of Dr. Padilla-Martinez's opinion.

### B.     The ALJ Properly Determined the Persuasiveness of Dr. Zeff's Opinion.

Plaintiff argues that the ALJ's decision is due to be remanded "because the ALJ did not adequately evaluate the opinion of the VA compensation and pension examiner, Dr. Zeff." (Doc. 15 at 26).  Specifically, Plaintiff contends that the ALJ erred when he determined that Dr. Zeff's opinion was "overly vague," (*id.* (citing Tr. at 24)), arguing instead that Dr. Zeff's opinion provided specific findings, which the ALJ should have addressed, (*id.* at 26-27 (citing Tr. at 274-275)).  Additionally, Plaintiff asserts that the ALJ incorrectly found that Plaintiff's reported activities of daily living were inconsistent with Dr. Zeff's opinion on Plaintiff's ability to socialize.  (*Id.* at 27 (citing Tr. at 24, 199, 274)).

In response, Defendant contends that substantial evidence supports the ALJ's finding that Dr. Zeff's opinion was not persuasive.  (*See id.* at 27-29 (citing Tr. at 23-24, 99-200, 268-75)).  Defendant emphasizes that "[w]hile Dr. Zeff suggested [that Plaintiff had] some difficulty with tasks and identified . . . underlying reason[s], she did not explain how or to what degree th[ese] difficult[ies] would limit Plaintiff in an occupational setting."  (*Id.* at 28).  Defendant also argues that the ALJ correctly found that Plaintiff's ability to attend church weekly was inconsistent with Dr. Zeff's opinion.  (*Id.* at 28-29).  Moreover, Defendant asserts that the ALJ specifically accounted for Plaintiff's social limitations by restricting him to work that involved no interaction with the public.  (*Id.* at 29).

As mentioned above, the Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Plaintiff filed his claim on March 28, 2017, (Tr. at 15), so the revised regulations apply, *see* 20 C.F.R. § 404.1520c.  The revised regulations require that an ALJ must consider the following factors:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered.  *See* 20 C.F.R. § 404.1520c(b)(2).  In assessing the supportability and consistency of a

medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source.  20 C.F.R. § 404.1520c(b)(1).  The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Here, Plaintiff takes issue with the ALJ's findings that Dr. Zeff's opinion was not persuasive.  (Doc. 15 at 26-27).  To assess whether the ALJ's finding is supported

by substantial evidence, the Court reviews below how he determined the persuasiveness of the opinion.

Upon review of Dr. Zeff's December 8, 2016 opinion, the Court notes that it includes the statement that "[Plaintiff] meets diagnostic criteria for PTSD [and] Alcohol Use Disorder, in sustained full remission." (Tr. at 274). It continues by stating that Plaintiff has several limitations related to those diagnoses that would likely inhibit his ability to function in an occupational environment. (*Id.* at 275).

The ALJ summarized Dr. Zeff's opinion and stated that her statements were "overly vague" because she failed to "explain [the] limitations with any sort of detail or provide any specific restrictions in said areas." (*Id.* at 23-24). Moreover, the ALJ found that Dr. Zeff's opinion was inconsistent with Plaintiff's ability to attend church and engage in social activities with his family. (*Id.* at 24 (citing Tr. at 199)).

The Court finds that the ALJ properly assessed Dr. Zeff's opinion. As noted, the ALJ found Dr. Zeff's opinion inconsistent with other evidence of record. (*Id.*). Specifically, while Dr. Zeff opined that Plaintiff would "likely show impairment in establishing/maintaining interpersonal relationships [and has] trouble being around others/being in crowds," the ALJ noted that Plaintiff reported weekly church attendance and socialization with a friend and his family. (*Id.* at 24 (citing Tr. at 199, 275)).

Additionally, the Court is not persuaded by Plaintiff's assertion that weekly attendance at a church service is not inconsistent with Dr. Zeff's opinion. (*See* Doc. 15 at 27-28). While it is technically unclear whether Plaintiff "socializes with any

other people during the services," (Doc. 15 at 27), the ability to regularly attend a community gathering is plainly inconsistent with Dr. Zeff's opinion that Plaintiff has trouble being around others and in crowds, (Tr. at 275). Similarly, as recognized by the ALJ, Plaintiff's ability to socialize with and maintain relationships with his friend and family is inconsistent with Dr. Zeff's opinion that Plaintiff would "show impairment in establishing/maintaining interpersonal relationships in an occupational setting due to his anxiety/mistrust of others." (*See id.* at 24, 199, 275).

The ALJ also found that Dr. Zeff's opinion was "overly vague" and lacked any reference to specific restrictions or limitations arising from Plaintiff's impairments. (*Id.* at 24 (citing Tr. at 275)). For example, Dr. Zeff concludes that "[Plaintiff's] reported anxiety [and] depression would likely impair his ability to succeed in an occupational setting." (*Id.* at 275). Dr. Zeff does not provide any additional information or supporting explanation beyond this broad assertion. (*See id.*). The ALJ appropriately noted this absence of information and supporting explanation in his finding. *See* 20 C.F.R. § 404.1520c(c)(1) ("Supportability. The more relevant the objective medical evidence *and supporting explanations* presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."); *see also Richardson v. Kijakazi*, No. 8:20-cv-1107-AEP, 2021 WL 3879049, at *4 (M.D. Fla. Aug. 31, 2021) ("Given the inconsistencies with the record and the vague statements within Dr. Glaros's opinion, the ALJ appropriately found Dr. Glaros's opinion not persuasive.").

Additionally, as noted by Defendant, the ALJ accounted for Plaintiff's difficulties with socialization in his RFC by limiting Plaintiff to "[no interaction] with the general public." (*See* Tr. at 20). Thus, even if the ALJ had incorrectly determined the persuasiveness of Dr. Zeff's opinion, any error would have been harmless because the ALJ accounted for Plaintiff's difficulties with socialization in an occupational setting. *See Denomme v. Comm'r of Soc. Sec. Admin.*, 518 F. App'x at 875, 877-78 (11th Cir. 2013).

In sum, the Court finds that the ALJ sufficiently analyzed the supportability and consistency of Dr. Zeff's opinion when determining its persuasiveness as required by 20 C.F.R. § 404.1520c. Additionally, the Court finds that the ALJ's determination of the persuasiveness of Dr. Zeff's opinion is supported by substantial evidence within the record. Thus, the Court finds that the ALJ's decision is due to be affirmed as to his determination of the persuasiveness of Dr. Zeff's opinion.

### C. The ALJ Properly Determined the Persuasiveness of Plaintiff's 100 Percent VA Disability Rating.

Plaintiff argues that the ALJ erred by failing to provide a sufficient justification for finding Plaintiff's VA service-connected disability rating of 100 percent unpersuasive. (*See* Doc. 15 at 29-31). Specifically, Plaintiff contends that VA disability ratings are generally entitled to "great weight" within the Eleventh Circuit and the ALJ should have provided adequate reasons to reject Plaintiff's VA disability rating. (*Id.* at 29-30 (citations omitted)). Moreover, Plaintiff asserts that his 100 percent VA disability rating shows that "the VA determined that he is unable

to perform any work in the national economy." (*Id.* at 31). In sum, Plaintiff contends that the ALJ's "perfunctory finding that the VA uses a different standard than the Social Security administration," is insufficient for the ALJ to disregard Plaintiff's 100 percent VA disability rating.

In response, Defendant asserts that the 2017 revised regulations apply to Plaintiff's case and change the way ALJs are required to assess VA disability ratings. (*Id.* at 31). Specifically, Defendant contends that the ALJ did not have to analyze Plaintiff's VA disability rating and, instead, only needed to consider the evidence underlying the VA's decision. (*See id.* at 31-33 (citing 20 C.F.R. §§ 404.1504, 404.1513)). Defendant asserts that the case law cited by Plaintiff involves claims that predate the revised regulations and is, therefore, inapplicable to Plaintiff's case. (*Id.* at 34). Finally, Defendant contends that the ALJ complied with the new regulations when he "considered the entire record," including the documents underlying the VA's disability rating, and discussed them throughout his decision. (*Id.* at 35 (citing Tr. at 20-25)). Thus, Defendant argues that the ALJ's decision is supported by substantial evidence and should be affirmed. (*Id.*).

As addressed above, the Social Security Administration's revised regulations apply to Plaintiff's claim. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). As to other agency determinations, such as a Department of Veteran Affairs disability determination, the new regulations state that "we will not provide any analysis in our determination or decision about a decision made by any other governmental agency . . . about whether you are disabled, blind, employable, or

entitled to benefits." 20 C.F.R. § 404.1504. Moreover, the regulations specify that VA disability ratings constitute evidence that is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1). Nevertheless, the regulations require the ALJ to "consider all of the supporting evidence underlying the other governmental agency['s] . . . decision that that [the ALJ] receive[s] as evidence in [a plaintiff's] claim." 20 C.F.R. § 404.1504.

Additionally, while Plaintiff cites Eleventh Circuit precedent for its treatment of an ALJ's analysis of VA disability determination before March 27, 2017, (*see* Doc. 15 at 29-31 (citing *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020); *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016))), he fails to address the revised regulations. Assuming *arguendo* that Plaintiff had contested the applicability of the new regulations to his claim, the Court would not be persuaded. In fact, in *Noble*, the Eleventh Circuit briefly addressed the revised regulations as follows:

> Although under the new regulation the ALJ no longer analyzes the other agency's decision, the ALJ still must "consider[] all of the supporting evidence underlying the other governmental agency['s] . . . decision" that was placed in the record before the ALJ[, but b]ecause the new regulation does not apply to Noble's case, we do not take it into account or address it further.

*Noble*, 963 F.3d at 1324 (quoting 20 C.F.R. § 404.1504). Thus, in light of *Noble* and similar treatment by other courts, this Court applies the revised regulations to Plaintiff's claim. *See Daniels v. Saul*, No. 7:19-cv-01003-RDP, 2020 WL 4922151, at *7 (N.D. Ala. Aug. 21, 2020) (applying the revised regulations in the context of an

ALJ's treatment of a VA disability determination); *see also Rhine v. Saul*, No. 4:19-CV-1781, 2021 WL 254066, at *8 (M.D. Pa. Jan. 26, 2021) (same).

Accordingly, the Court is not persuaded by Plaintiff's argument that the ALJ erred by finding Plaintiff's 100 percent VA disability rating unpersuasive.  Under the new regulations, the ALJ was not required to assign any persuasiveness or provide any analysis of the VA disability rating.  *See* 20 C.F.R. §§ 404.1504, 404.1520b(c)(1). Rather, the ALJ was only required to consider the evidence underlying the VA's decision.  *See id.*  Additionally, while Plaintiff does not argue that the ALJ failed to address the evidence underlying the VA's determination, the Court finds the argument would have been ineffective given the ALJ's comprehensive assessment of all the evidence received in Plaintiff's claim under 20 C.F.R. § 404.1513, including the functional impact statements from Plaintiff's VA medical record and Dr. Zeff's opinion.  (*See* Tr. at 20-25 (citations omitted)).

Accordingly, because the revised regulations apply to Plaintiff's case and the ALJ considered the supporting evidence underlying the VA's disability determination, the Court finds that the ALJ's failure to discuss the substance of Plaintiff's VA rating does not necessitate remand.

### D.    The ALJ Properly Determined the Persuasiveness of Dr. Wieczorek's Opinion.

Plaintiff argues that the ALJ erred by finding Dr. Wieczorek's opinion unpersuasive.  (Doc. 15 at 35-37).  Specifically, Plaintiff contends that the ALJ's did not provide sufficient justification to reject Dr. Wieczorek's conclusion that

Plaintiff's headaches would interfere with his ability to work.  (*Id.* at 35-36 (citing Tr. at 637, 809-10, 898)).  Moreover, Plaintiff contends that Dr. Wieczorek's opinion that "Plaintiff was unable to work during times where he was suffering from a headache," was not an issue reserved for the Commissioner, but rather, "an assessment of Plaintiff's headache pain, which was a medical determination."  (*Id.* at 36).  Plaintiff asserts that, because Dr. Wieczorek's opinion was not an issue reserved for the Commissioner, the ALJ's finding is not supported by substantial evidence. (*Id.* at 36-37).

In response, Defendant argues that the ALJ properly determined that Dr. Wieczorek's opinion was unpersuasive because his opinion was inconsistent with the other evidence of record, unsupported by his own records, and vague.  (*Id.* at 37-38). Defendant also asserts that Dr. Wieczorek's opinion that Plaintiff was unable to work due to headaches constitutes an opinion on an issue reserved for the Commissioner, and therefore, was neither valuable nor persuasive.  (*Id.* at 37 (citing Tr. at 25, 898; 20 C.F.R. § 404.1520b(c)(3)(i))).  Additionally, Defendant argues that Dr. Wieczorek's opinion is inconsistent with Plaintiff's testimony regarding the severity of his headaches.  (*Id.* at 38 (citing Tr. at 17, 20, 41, 810)).

As repeatedly addressed above, the Social Security Administration's revised regulations apply to Plaintiff's claim.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  The regulations require that an ALJ must consider the following factors:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4)

specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).

Again, supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered.  *See* 20 C.F.R. § 404.1520c(b)(2).  In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source.  20 C.F.R. § 404.1520c(b)(1).  The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6,

2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).  Additionally, the regulations assert that statements on issues reserved to the Commissioner, such as statements that a plaintiff can or cannot work, will constitute evidence that is inherently neither valuable nor persuasive.  20 C.F.R. § 404.1520b(c)(3)(i).

Here, Plaintiff opposes the ALJ's findings that Dr. Wieczorek's opinion was unpersuasive.  (Doc. 15 at 35-37).  To assess whether the ALJ's finding is supported by substantial evidence, the Court reviews below how he determined the persuasiveness of Dr. Wieczorek's opinion.

The ALJ found that Dr. Wieczorek's opinion that Plaintiff could only sit for thirty minutes, (Tr. at 897), was inconsistent with Dr. Beecher's May 16, 2017 examination in which Dr. Beecher noted that Plaintiff was able to fully squat, exhibited negative straight leg raises, intact lower extremity strength, and full lumbar range of motion, (*Id.* at 25 (citing Tr. at 566-67)).  Additionally, the ALJ found that Dr. Wieczorek's opinion lacked supporting explanations or specific limitations on its assertion that Plaintiff had neck mobility "to a limited extent."  (*See id.* (citing Tr. at 897)); *see also* 20 C.F.R. § 404.1520c(c)(1).  Finally, the ALJ found that Dr. Wieczorek's opinion that Plaintiff could not work while suffering from a headache constituted evidence that was inherently neither valuable nor persuasive because it constituted an opinion on an issue reserved to the Commissioner.  (*Id.* (citing 20 C.F.R. § 404.1520b(c)(3)(i))).  Upon a review of the record and applicable

regulations, the Court finds that the ALJ's determination that Dr. Wieczorek's opinion was unpersuasive is supported by substantial evidence.

Additionally, to the extent that Plaintiff argues that Dr. Wieczorek's opinion as to his ability to work while experiencing a headache did not constitute an opinion on an issue reserved to the Commissioner, the Court is not persuaded. The "Medical Statement Regarding Headaches for Social Security Disability Claim" filled out by Dr. Wieczorek states: "[i]s the patient able to work while suffering a headache? (circle answer)." (*Id.* at 898). Dr. Wieczorek circled "No." (*Id.*). The question, and therefore Dr. Wieczorek's opinion, go right to the heart of Plaintiff's ability to work. (*Id.*). The Court cannot construe Dr. Wieczorek's response to the question "is the patient able to work while suffering a headache," as an "assessment of Plaintiff's headache pain," as Plaintiff suggests. (*See* Doc. 15 at 36). Rather, Dr. Wieczorek's response constitutes an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i).

Accordingly, the Court finds that the ALJ sufficiently analyzed the supportability and consistency of Dr. Wieczorek's opinion when determining its persuasiveness as required by the revised regulations. *See* 20 C.F.R. § 404.1520c; *see also* 20 C.F.R. § 404.1520b(c)(3)(i). Additionally, the Court finds that the ALJ's determination of the persuasiveness of Dr. Wieczorek's opinion is supported by substantial evidence within the record. Thus, the Court finds that the ALJ's decision is due to be affirmed as to his determination of the persuasiveness of Dr. Wieczorek's opinion.

## VI.  Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ's decision is due to be affirmed as it is supported by substantial evidence within the record.  Accordingly, the Court **ORDERS** that:

1.  The decision of the Commissioner is **AFFIRMED** Pursuant to sentence four of 42 U.S.C. § 405(g).

2.  The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 16, 2021.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties